FILED
VANESSA L. ARMSTRONG, CLERK
AUG 17 2017
U.S. DISTRICT COURT
WEST'N. DIST. KENTUCKY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH

UNITED STATES OF AMERICA            PLAINTIFF

v.            CRIMINAL NO. 5:17-CR-28-TBR

JAMES GRANT KING            DEFENDANT

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the United States of America, by John E. Kuhn, Jr., United States Attorney for the Western District of Kentucky, and defendant, James Grant King, and his attorneys, Mark P. Bryant and Emily Ward Roark, have agreed upon the following:

1. Defendant acknowledges that he has been charged in the Information in this case with violations of Title 18, United States Code, Sections 1028A and 1343. Defendant further acknowledges that the Information in this case seeks forfeiture of any property constituting or derived from any proceeds obtained, directly or indirectly, as the result of any such violations pursuant to Title 18, United States Code, Sections 981 and 982, and Title 28, United States Code, Section 2461, by reason of the offenses charged in Counts 1, 2, and 3 of the Information.

2. Defendant has read the charges against him contained in the Information, and those charges have been fully explained to him by his attorneys. Defendant fully understands the nature and elements of the crimes with which he has been charged.

3. Defendant will enter a voluntary plea of guilty to Counts 1, 2, and 3 in this case. Defendant will plead guilty because he is in fact guilty of the charges. The parties agree to the following factual basis for this plea:

From March of 2007 until May of 2017, King, the defendant, was an attorney licensed by the Kentucky Bar Association and authorized to practice law within the Commonwealth of Kentucky. During this time, at least a portion of King's practice involved plaintiff's work and clients would seek his services when they believed that a tort had been committed against them, i.e. car accidents, etc. King's scheme to defraud involved meeting with clients and gathering information about their cases. However, King would then tell some clients that they had no viable case and that they would be unsuccessful in recovering any money. Overall, King's scheme was to devalue his clients' cases so he could keep more of the settlement money that the case eventually would receive. After deflating his clients' expectations, King would then send the information about their cases to the relevant insurance companies and demand a settlement. In turn, the insurance companies would agree to settle the cases and send King the settlement amounts. Depending on the case, King would then either keep the entire settlement amount for himself or tell clients that he was still awaiting resolution and settlement of the case with the insurance company, knowing that the insurance company had already settled the case and sent him the full settlement amount. King's clients would believe him because they trusted him. The settlements that King received from the insurance companies often came in the form of a check. In order to cash or deposit the check, King would have to forge the signatures of his clients so that they would not know about the check. King would forge these signatures without any lawful authority. One example of King forging a client's signature was when King received a check from USAA for the settlement of the case of R.F. R.F. is a living person. On May 12, 2014, USAA executed a check made payable to King and R.F. for $50,000. King endorsed the check by signing both his name and R.F.'s name on the back of the check. King did this so R.F. would not become aware of this check. The transfer of the $50,000 from USAA's account in

Texas to King's account in Kentucky triggered an interstate wire transaction because the check cleared through the Federal Reserve Bank in Saint Louis, Missouri.

At no time did King ever have authorization from R.F. to forge his signature on any check or documentation. Furthermore, King knew he did not have any authority to forge R.F.'s signature but did so anyways with the intent to defraud R.F. By endorsing the check using his own signature and the forged signature of R.F., King was able to use the $50,000 for the benefit of himself, his family, and/or his friends.

King also devised a scheme to defraud B.J. by obtaining a loan from B.J. for $97,500. King told B.J. that he was having financial difficulties and that he needed money. B.J. agreed to lend King $97,500 and wrote King a check for that amount on August 11, 2015. As collateral for the loan, King transferred title to his Phoenix Model 920 Pro XP boat, bearing HIN CJJP7185B313, to B.J. The arrangement between King and B.J. was that B.J. would return the title to the boat once King repaid the loan. However, on or about November 3, 2015, King applied for a duplicate title to the Phoenix Model 920 Pro XP boat, bearing HIN CJJP7185B313, and then, unbeknownst to B.J., sold the Phoenix Model 920 Pro XP boat, bearing HIN CJJP7185B313, without repaying the $97,500 loan to B.J. King intended to defraud B.J. by intentionally withholding from B.J. that he had obtained a new title for the boat. This material omission by King was done in order to sell the boat, which was the collateral on their loan agreement. As part of his scheme, B.J. transferred the loan money to King by check in the amount of $97,500, which was drawn on B.J.'s account with Regions Bank in Paducah, Kentucky, and that check triggered an interstate wire transfer by clearing through the Federal Reserve Bank in Saint Louis, Missouri.

4. Defendant understands that the charges to which he will plead guilty carry a combined maximum term of imprisonment of 42 years, a combined maximum fine of $750,000, and a term of supervised release up to 3 years, which the Court may specify. Count 2 of the Indictment requires a mandatory sentence of two years and that sentence is in addition to the other counts of the Indictment. The court has discretion whether to run Counts 1 and 3 consecutive or concurrent with one another. Defendant understands that an additional term of imprisonment may be ordered if the terms of the supervised release are violated, as explained in 18 U.S.C. § 3583. Defendant understands that as a result of the charges to which he will plead guilty he may be ordered to forfeit any property constituting or derived from any proceeds obtained, directly or indirectly, as the result of any such violations.

5. Defendant understands that if a term of imprisonment of more than one year is imposed, the Sentencing Guidelines require a term of supervised release and that he will then be subject to certain conditions of release. §§5D1.1, 5D1.2, 5D1.3.

6. Defendant understands that by pleading guilty, he surrenders certain rights set forth below. Defendant's attorneys have explained those rights to him and the consequences of his waiver of those rights, including the following:

    A. If defendant persists in a plea of not guilty to the charges against him, he has the right to a public and speedy trial. The trial could either be a jury trial or a trial by the judge sitting without a jury. If there is a jury trial, the jury would have to agree unanimously before it could return a verdict of either guilty or not guilty. The jury would be instructed that defendant is presumed innocent and that it could not convict him unless, after hearing all the evidence, it was persuaded of defendant's guilt beyond a reasonable doubt.

4

   B. At a trial, whether by a jury or a judge, the United States would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them. In turn, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court.

   C. At a trial, defendant would have a privilege against self-incrimination and he could decline to testify, without any inference of guilt being drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

  7. Defendant understands that the United States Attorney's Office has an obligation to fully apprise the District Court and the United States Probation Office of all facts pertinent to the sentencing process, and to respond to all legal or factual inquiries that might arise either before, during, or after sentencing. Defendant admits all acts and essential elements of the indictment counts to which he pleads guilty.

  8. Defendant agrees that the amount of restitution ordered by the Court shall include Defendant's total offense conduct, and is not limited to the counts of conviction. The parties agree and stipulate that Defendant shall pay restitution in the amount of at least $550,000. However, should additional victims with claims for restitution be identified, the United States will share the information with defense counsel and the Court. The matter of any additional restitution not listed herein will be addressed at the time of sentencing or, if later discovered, within 90 days after sentencing, pursuant to 18 U.S.C. § 3664(d)(5). The parties

agree that the restitution shall be ordered due and payable on the date of sentencing. Defendant agrees that any payment schedule imposed by the Court is without prejudice to the United States to take all actions available to it to collect the full amount of the restitution at any time. Restitution payments shall be made payable to the U.S. District Court Clerk at Gene Snyder Courthouse, 601 W. Broadway, Louisville, KY 40202.

Defendant agrees that not later than 45 days from entry of the Plea Agreement, Defendant shall provide to the United States, under penalty of perjury, a financial disclosure form listing all Defendant's assets/financial interests. Defendant authorizes the United States to run credit bureau reports prior to sentencing, and Defendant will sign releases authorizing the United States to obtain Defendant's financial records. Defendant understands that these assets and financial interests include all assets and financial interests in which Defendant has an interest, direct or indirect, whether held in Defendant's own name or in the name of another, in any property, real or personal. Defendant shall also identify all assets valued at more than $5,000 which have been transferred to third parties since the date of the first offense, including the location of the assets and the identity of the third party(ies). Defendant agrees that the United States may share the contents of the reports and financial disclosures with the Court and U.S. Probation.

Defendant agrees to submit to a deposition in aid of collection at times and places that the United States directs. If the Defendant has a financial advisor or accountant, Defendant agrees, at his expense, to make them available to aid the United States in determining Defendant's net worth. Defendant authorizes the United States to file notice of Lis Pendens prior to judgment on any real property Defendant owns either individually or jointly. Defendant agrees to his name and debt being added to the Treasury Offset Program.

Upon execution of the Plea Agreement, Defendant agrees not to transfer, sell, or secrete any of Defendant's property, real or personal, held jointly, individually or by nominee/third party, valued at $5,000 or more without first advising the United States not less than 10 days before the proposed sale or transfer. Defendant agrees that failure to comply with any of the provisions of this Agreement constitutes a material breach of the Plea Agreement and Defendant agrees that the United States is relieved of its obligations under this Agreement and/or may not move the Court pursuant to U.S.S.G. § 3E1.1(b) to reduce the offense level by one additional level, and may in its discretion argue to the Court that the Defendant should not receive a two-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). However, the Defendant may not withdraw his guilty plea because of his breach. The defendant further understands that he may be responsible for a fine, costs of prosecution, costs of incarceration and supervision which may be required.

9. Defendant acknowledges liability for the special assessment mandated by 18 U.S.C. § 3013 and will pay the assessment in the amount of $300 to the United States District Court Clerk's Office by the date of sentencing.

10. At the time of sentencing, the United States will:

-recommend a sentence of imprisonment at the lowest end of the applicable Guideline Range, but not less than any mandatory minimum term of imprisonment required by law.

-if the court elects to impose a fine, recommend a fine at the lowest end of the applicable Guideline Range, to be due and payable on the date of sentencing.[1]

-recommend a reduction of 2 or 3 levels below the otherwise applicable Guideline for "acceptance of responsibility" as provided

---

[1] **Error! Main Document Only.** The defendant acknowledges that he has read the Notice and Penalty Pages attached to the Indictment, and that he understands the interest and penalty provisions applicable to the fine imposed and included in the Judgment entered by the Court, said Notice and Penalty Pages are incorporated herein by reference.

7

by §3E1.1(a) [and, if applicable, (b)], provided the defendant does not engage in future conduct which violates any federal or state law, violates a condition of bond, constitutes obstruction of justice, or otherwise demonstrates a lack of acceptance of responsibility. Should such conduct occur and the United States, therefore, opposes the reduction for acceptance, this plea agreement remains binding and the defendant will not be allowed to withdraw his plea.

-stipulate for sentencing purposes, but not for restitution purposes, that the loss amount is greater than $550,000 but less than $1.5 million under USSG § 2B1.1(b)(1)(H).

11. Both parties have independently reviewed the Sentencing Guidelines applicable in this case, and in their best judgment and belief, conclude as follows:

A. The Applicable Offense Level should be determined as follows:

| | | |
|---|---|---|
| § 2B1.1(a)(1) | Base Offense Level | 7 |
| § 2B1.1(b)(1)(H) | More Than $550,000 | +14 |
| § 2B1.1(b)(2)(A)(i) | More Than 10 Victims | +2 |
| § 2B1.1(b)(10)(C) | Sophisticated Means | +2 |
| § 3B1.3 | Abuse of Trust | +2 |

**Total offense level**   27

| | | |
|---|---|---|
| § 3E1.1(a) and (b) | Acceptance of Responsibility | -3 |

**Adjusted offense level**   24

B. The Criminal History of defendant shall be determined upon completion of the presentence investigation, pursuant to Fed. R. Crim. P. 32(c). Both parties reserve the right to object to the USSG §4A1.1 calculation of defendant's criminal history. The parties agree to not seek a departure from the Criminal History Category pursuant to §4A1.3.

C. The foregoing statements of applicability of sections of the Sentencing Guidelines and the statement of facts are not binding upon the Court. The defendant understands the Court will independently calculate the Guidelines at sentencing and

8

defendant may not withdraw the plea of guilty solely because the Court does not agree with either the statement of facts or Sentencing Guideline application.

12. Defendant is aware of his right to appeal his conviction and that 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. Unless based on claims of ineffective assistance of counsel or prosecutorial misconduct, the Defendant knowingly and voluntarily waives the right (a) to directly appeal his conviction and the resulting sentence pursuant to Fed. R. App. P. 4(b) and 18 U.S.C. § 3742, and (b) to contest or collaterally attack his conviction and the resulting sentence under 28 U.S.C. § 2255 or otherwise.

13. Defendant agrees not to pursue or initiate any civil claims or suits against the United States of America, its agencies or employees, whether or not presently known to defendant, arising out of the investigation or prosecution of the offenses covered by this Agreement.

14. The defendant hereby waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

15. Defendant agrees to interpose no objection to the United States transferring evidence or providing information concerning defendant and this offense, to other state and federal agencies or other organizations, including, but not limited to the Internal Revenue Service, other law enforcement agencies, and any licensing and regulatory bodies, or to the entry of an order under Fed. R. Crim. P. 6(e) authorizing transfer to the Examination Division of the Internal Revenue Service of defendant's documents, or documents of third persons, in possession

of the Grand Jury, the United States Attorney, or the Criminal Investigation Division of the Internal Revenue Service.

16. It is understood that pursuant to Fed. R. Crim. P. 11(c)(1)(B), the recommendations of the United States are not binding on the Court. In other words, the Court is not bound by the sentencing recommendation and defendant will have no right to withdraw his guilty plea if the Court decides not to accept the sentencing recommendation set forth in this Agreement.

17. Defendant agrees that the disposition provided for within this Agreement is fair, taking into account all aggravating and mitigating factors. Defendant states that he has informed the United States Attorney's Office and the Probation Officer, either directly or through his attorney, of all mitigating factors.

18. This document and the supplemental plea agreement state the complete and only Plea Agreements between the United States Attorney for the Western District of Kentucky and defendant in this case, and are binding only on the parties to this Agreement, supersedes all prior understandings, if any, whether written or oral, and cannot be modified other than in writing that are signed by all parties or on the record in Court. No other promises or inducements have been or will be made to defendant in connection with this case, nor have any predictions or threats been made in connection with this plea.

AGREED:

JOHN E. KUHN, JR.
United States Attorney

By:

_____   17 Aug 2017
Nute A. Bonner                    Date
Assistant United States Attorney

I have read this Agreement and carefully reviewed every part of it with my attorneys. I fully understand it and I voluntarily agree to it.

_____   8/17/17
James Grant King                  Date
Defendant

We are the defendant's counsel. We have carefully reviewed every part of this Agreement with the defendant. To our knowledge, our client's decision to enter into this Agreement is an informed and voluntary one.

_____   Aug 17, 2017
Mark P. Bryant                    Date
Counsel for Defendant

_____   Aug 17, 2017
Emily Ward Roark                  Date
Counsel for Defendant

JEK:NAB

11