**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**PADUCAH DIVISION**
**Case No. 5:17-cr-00028-TBR**

UNITED STATES OF AMERICA                                         PLAINTIFF

v.

JAMES GRANT KING                                                  DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court upon Defendant James King's ("King") Motion for Reduction of Sentence. [DN 47]. The government responded. [DN 52]. King has replied. [DN 53]. King has also filed a supplemental reply. [DN 54]. As such, this matter is ripe for adjudication. For the reasons, that follow, **IT IS HEREBY ORDERED** that King's Motion for Reduction of Sentence [DN 47] is **DENIED**.

## I. Background

An information was filed against King on July 17, 2017 for two counts of wire fraud and one count of aggravated identity theft. [DN 1]. King plead guilty to all three counts on August 17, 2017. [DN 14]. On November 29, 2017 King was sentenced to 92 months imprisonment for the wire fraud charges and 24 months (consecutive) for the aggravated identity theft charge for a total of 116 months imprisonment. [DN 26]. King now seeks a reduction in his sentence due to the Covid-19 pandemic and family circumstances.

## II. Legal Standard

"The First Step Act modified the statute concerning the compassionate release of federal prisoners, 18 U.S.C. § 3852, such that district courts may entertain motions filed by incarcerated defendants seeking to reduce their sentences." *United States of America v. D-1 Duwane Hayes*, No. 16-20491, 2020 WL 7767946, at *1 (E.D. Mich. Dec. 30, 2020) (citing *United States v. Jones*,

980 F.3d 1098, 1100 (6th Cir. 2020)). "Now, an imprisoned person may file a motion for compassionate release after (1) exhausting the BOP's administrative process; or (2) thirty days after the warden received the compassionate release request—whichever is earlier." *Jones*, 980 F.3d at 1105 (citing First Step Act of 2018, Pub. L. 115-391, Title VI, § 603(b), 132 Stat. 5194, 5239; 18 U.S.C. § 3582(c)(1)(A) (2020)).

In considering a compassionate release motion under 18 U.S.C. § 3582(c)(1)(A), a district court must proceed through three steps of analysis. *United States v. Elias*, No. 20-3654, 2021 WL 50169, at *1 (6th Cir. Jan. 6, 2021) (citing *Jones*, 980 F.3d at 1101). At step one, "the court must 'find' that 'extraordinary and compelling reasons warrant a sentence reduction.'" *Id.* (citing *Jones*, 980 F.3d at 1101). In step two, the court must "ensure 'that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.'" *Id.* (citing *Jones*, 980 F.3d at 1101). Although the Sentencing Commission's policy statement on reductions in terms of imprisonment under 18 U.S.C. § 3582(c)(1)(A) is recited at U.S.S.G. § 1B1.13, "the Commission has not updated § 1B1.13 since the First Step Act's passage in December 2018 ... [and] the policy statement does not wholly survive the First Step Act's promulgation." *Jones*, 980 F.3d at 1109 (citing U.S.S.G. § 1B1.13 (U.S. Sent'g Comm'n 2018)). Consequently, the Sixth Circuit in *Jones* decided that "[u]ntil the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion." *Id.* Thus, for now, district courts need not ensure that their ideas of extraordinary and compelling reasons for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A) are consistent with the Sentencing Commission's idea of extraordinary and compelling reasons for

a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A) as currently reflected at U.S.S.G. § 1B1.13.

Despite the Sixth Circuit's holding in *Jones*, this Court agrees with the United States District Court for the Eastern District of Kentucky in stating that "[w]hile the policy statement found in U.S.S.G. § 1B1.13 of the Sentencing Guidelines is not binding, it provides a useful starting point to determine whether extraordinary and compelling reasons exist." *United States v. Muncy*, No. 6: 07-090-DCR, 2020 WL 7774903, at *1 (E.D. Ky. Dec. 30, 2020). The application notes to § 1B1.13 provide that extraordinary and compelling reasons for a reduction in terms of imprisonment include certain medical conditions, age of the defendant, family circumstances, and other reasons as determined by the Bureau of Prisons. U.S.S.G. § 1B1.13 cmt. n.1. Specific medical conditions of a defendant constituting extraordinary and compelling reasons for a reduction in terms of imprisonment may include "terminal illness," "a serious physical or medical condition," "a serious functional or cognitive impairment," or "deteriorating physical or mental health because of the aging process." *Id.* The application note to U.S.S.G. § 1B1.13 further provides that the age of a defendant may be a necessary and compelling reason for a reduction in terms of imprisonment when "[t]he defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." *Id.*

After considering whether extraordinary and compelling reasons warrant a sentence reduction the district court proceeds to the final step of the analysis. If a reduction is warranted the court is to consider whether that reduction is defensible under the circumstances of the case by considering any relevant factors of 18 U.S.C. § 3553(a). *Elias*, 2021 WL 50169, at *1 (citing *Jones*, 980 F.3d at 1101); *Jones*, 980 F.3d at 1108.

3

### III. Discussion

#### A. Exhaustion of Administrative Remedies.

"Federal law has long authorized courts to reduce the sentences of federal prisoners facing extraordinary health conditions and other serious hardships, but only under very limited circumstances." *United States v. Beck*, 425 F.Supp.3d 573, 577 (M.D.N.C. June 28, 2019). Under the First Step Act, courts are now permitted to "consider motions by defendants for compassionate release without a motion" by the BOP Director "so long as the defendant has asked the Director to bring such a motion and the Director fails to or refuses." *Marshall,* 2020 WL 114437, at *1 (W.D. Ky. Jan. 9, 2020).

On May 11, 2020, King, by counsel, sent a request for compassionate release to the warden. More than 30 days have elapsed since King made his request. Therefore, King has exhausted his administrative remedies.

#### B. Extraordinary and Compelling Reasons

King argues he is entitled to a sentence reduction due to his various medical conditions and a recent change in his familial responsibilities. The government argues King has not met the "extraordinary and compelling" standard.

King states he has been diagnosed with asthma, high cholesterol, low testosterone, and a vitamin D deficiency and has experienced allergic reactions. The provided medical records confirm King's conditions. The Centers for Disease Control ("CDC") has noted that those with moderate to severe asthma and those in an immunocompromised state *may* be at an increased risk for severe illness from Covid-19.[1]  The CDC has not stated that the risk of experiencing severe

---

[1] Centers for Disease Control, People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last accessed February 16, 2021).

Covid-19 symptoms is increased by high cholesterol. Although the CDC has not listed low testosterone as one of the risk factors, several publications have noticed a link between low testosterone and severe cases of Covid-19.[2] King's medical records show multiple episodes of anaphylaxis. However, several of those incidents were due to reactions to medications. King had imaging of his chest done and the report noted the presence of wires from a prior sternotomy but also stated his lungs were clear. Finally, there is also some indication that vitamin D deficiency does contribute to increased risk of severe illness.[3]

The Court does recognize that King suffers from some medical conditions that may place him at a greater risk for severe illness from Covid-19. This Court does not take that lightly. However, it appears that majority of King's conditions are being managed. The only complaint King makes regarding the treatment of his medical conditions, is the BOPs failure to give him an inhaler or epinephrine which he states he is required to carry. The Court encourages King to pursue all internal avenues to receive any medication that has been found to be necessary. At this point, King has not shown any request for an inhaler or epinephrine that has been denied.

In *United States v. Bolanos,* Bolanos was 63 years old and suffered from high blood pressure, anemia, Vitamins B12 and D deficiency, and pre-diabetes. 2020 WL 6684659, *1 (E.D. Cal. Nov. 12, 2020). The Court stated, "[e]ven if the Court gives extra weight to Defendant's vitamin D deficiency and finds that the constellation of her health conditions are sufficient to place her 'at risk' for severe illness from Covid 19, the fact remains that she is in a prison that has no

---

[2] *Testosterone deficiency in men infected with Covid-19*, Geoffrey Jackett and Michael Kirby, Trends in Urology and Men's Health, https://wchh.onlinelibrary.wiley.com/doi/full/10.1002/tre.773 (last accessed February 24, 2021); *Low testosterone can increase risk of severe Covid-19 in males,* Susha Cheriyedath, https://www.news-medical.net/news/20201204/Low-testosterone-can-increase-risk-of-severe-COVID-19-in-males.aspx (last accessed February 24, 2021).
[3] *Is there a connection between vitamin D deficiency and Covid-19?,* Mayo Clinic, https://newsnetwork.mayoclinic.org/discussion/is-there-a-connection-between-vitamin-d-deficiency-and-covid-19/ (last accessed February 24, 202).

active cases of Covid 19." *Id.* at 2. The Court went on to state, "[w]e do not mean to minimize the risks that COVID-19 poses in the federal prison system…[b]ut the mere existence of COVID-19 and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *Id.* (citing *United States v. Raia,* 954 F.3d 594, 597 (3d Cir. 2020)). King is not in a prison that has no active cases. FCI Yazoo City Low, where King is located, currently has two positive inmates and five staff members.[4] However, there is no widespread outbreak. Further, BOP facilities across the country have started the vaccination process. This process will aid facilities in their fight against the virus. The Court finds King's medical conditions do not meet the high bar of extraordinary and compelling reasons.

King also argues his changed family circumstances are extraordinary and compelling reasons. He and his wife have three children. King states his middle son has severe disabilities that require "significant levels of care." A signed note from Dr. Kyle Turnbo states King's middle child is a patient of his and the child is "non-verbal, has severe autism, requires constant care, is in diapers, and can neither bathe, feed, nor dress himself." [DN 47-4]. King also states his oldest son is having "extreme behavioral issues that have prevented him from living at home. He has been in juvenile detention as well as arrested twice for assaulting his mother."

In *United States v. Mojica,* the defendant argued the pandemic and the need for him to help with his autistic son and ailing mother amounted to extraordinary and compelling reasons. 2020 WL 6746478, *1 (S.D. N.Y. Nov. 16, 2020). The Court stated,

> "I do not doubt that Defendant was an involved and helpful father…but…his fiancée lives with and cares for his son. I am sure it is difficult for her to attend to the son's needs on her own, but she is apparently a competent and accomplished person who is managing. Defendant was aware of his mother's and son's conditions when he chose to commit the instant offense. While I sympathize with Defendant's family members, hardship on the family almost always results from serious criminal conduct, and rarely rises to the level of extraordinary and compelling."

---

[4] BOP Coronavirus, https://www.bop.gov/coronavirus/ (last assessed February 24, 2021).

*Id.* Here, the Court recognizes how difficult it must be for King's wife to provide adequate care for their child with special needs. That difficulty is exacerbated by the oldest son's current behavioral issues. While the Court does sympathize with King and his family members, these circumstances do not rise to the level of extraordinary and compelling. King's family circumstances combined with the pandemic also do not rise to the level of extraordinary and compelling. Therefore, the Court must deny King's motion.

## C. 18 U.S.C. § 3553(a) Factors

The Court must weigh the sentencing factors in 18 U.S.C. § 3553(a) to determine whether King's sentence should be reduced. *United States v. Willis*, 382 F.Supp.3d 1185, 1188 (D.N.M. 2019). Pursuant to § 3553(a), a court imposing a sentence shall consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed--
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for [the applicable offense category as set forth in the guidelines];
>
> (5) any pertinent policy statement ... by the Sentencing Commission;
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

The nature and circumstances of King's crime are very serious. He defrauded more than thirty clients out of a substantial sum of money. King was in a trusted position and took advantage of unsuspecting individuals. Although King will not be employed as an attorney again, his actions cannot be minimized. King also has a history of assault and DUI convictions. While incarcerated, King has taken advantage of a multitude of courses to better himself. During one of King's Program Reviews, a staff member noted, "[y]ou are going above and beyond at programming. Keep up the good job at taking classes." [DN 47-5 at PageID 466]. The Court applauds and encourages King to continue taking courses. While his rehabilitation is a factor the Court considers, here, it does not outweigh the seriousness of King's crime and the need to provide just punishment. Therefore, the §3553(a) factors do not warrant King's release. Therefore, the Court must deny King's motion.

## IV. Conclusion

For the above stated reasons, **IT IS HEREBY ORDERED** that King's Motion for Reduction of Sentence [DN 47] is **DENIED**.

**IT IS SO ORDERED**.

**Thomas B. Russell, Senior Judge**
**United States District Court**

February 26, 2021

cc: counsel